UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**RONALD SMITH,**

   *Plaintiff*,

v.                                                                                       Case No.  SA-23-CV-00623-JKP

**BEXAR COUNTY, RAMIRO
SANCHEZ, BEXAR COUNTY
DEPUTY;**

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Bexar County and Bexar County Deputy Ramiro Sanchez's Motion to Dismiss. *See* ECF No. 9. Plaintiff Ronald Smith responded to the motion and the Defendants then filed a memorandum in support of their motion. *See* ECF Nos. 10, 12. After reviewing the Defendants' Motion to Dismiss and the parties' responsive briefings, the Court determined it needed additional briefing before rendering its decision. Specifically, the Court sought briefing for the purpose of determining whether Officer Sanchez is entitled to qualified immunity on Smith's 42 U.S.C. § 1983 cause of action for unlawful search and seizure and pretextual mental health detention. *See* ECF No. 17. Both parties filed supplemental briefings in response to the Court's request. *See* ECF Nos. 18, 19. The Defendants attached to their supplement a flash drive containing Officer Sanchez's body cam footage. *See* ECF No. 19 at 6. Smith then filed a Motion to Strike Defendants' Evidentiary Supplements. *See* ECF No. 20. After due consideration of the parties' briefings and the applicable law, the Court **GRANTS IN PART** and **CONVERTS IN PART** the Defendants' Motion to Dismiss. *See* ECF No. 9. The Court further **DENIES AS MOOT** Smith's Motion to Strike. *See* ECF No. 20.

## BACKGROUND

This case arises from an April 14, 2021 traffic encounter between Plaintiff Ronald Smith and Defendant Officer Ramiro Sanchez, a Bexar County Sheriff's Deputy. According to Smith's amended complaint (ECF No. 7), which is the live pleading, Smith, a truck driver by trade, was traveling North on Bulverde Road in Bulverde, Texas, in his personal car after having lunch with his wife in Kirby, Texas, when he pulled over to inspect what he thought was a flat tire. About a minute after Smith pulled over, Officer Sanchez arrived on the scene by motorcycle and began questioning Smith. Smith "expressed his displeasure" with the encounter, asking Officer Sanchez why he was there. Officer Sanchez told Smith he was looking for a vehicle that loosely fit Smith's car's description and asked for Smith's personal information. Smith explained he was dyslexic and had a difficult time remembering such information. Smith alleges that, in response, Officer Sanchez became irate and started mocking Smith's dyslexia.

Officer Espino then arrived on the scene, at which point Officer Sanchez handcuffed Smith and placed him in the back of Officer Espino's cruiser. Officer Sanchez twisted Smith's arms and secured the handcuffs tightly, causing visible, lasting trauma to Smith's wrists. Officer Sanchez then searched Smith's person and his vehicle, including conducting a field test on a tube of toothpaste from Smith's car. Smith alleges that, after finding no evidence of a crime, Officer Sanchez manufactured a story about Smith having a mental health crisis to justify Smith's prolonged seizure and the search of his car. Officer Sanchez then called an ambulance to have Smith admitted to University Hospital for mental health detention. In the meantime, Officer Espino called Smith's wife who said Smith had no underlying conditions or pathologies. When Acadian ambulance personnel arrived on the scene, they assessed Smith, determined he was not having a mental health crisis, and recommended against transporting him to the hospital. They

then contacted University Health personnel to report their assessment and University Health personnel agreed Smith should not be sent to the hospital. Officer Sanchez ignored their advice and ordered that Smith be strapped to a gurney against his will and transported to the hospital. Almost immediately after Smith arrived at University Hospital, doctors determined he was of sound mind and released him. Smith later received a $2,400 bill for the ambulance ride.

Smith seeks compensation from Officer Sanchez under 42 U.S.C. § 1983 for violating his Fourth and Fourteenth Amendment rights, through unlawful search and seizure and pretextual mental health detention. Smith further alleges Bexar County is liable for adopting policies and practices which led to Officer Sanchez violating Smith's rights. Finally, Smith alleges Officer Sanchez and Bexar County violated federal anti-discrimination laws by discriminating against him as a person with a disability, dyslexia. The Defendants argue Smith's complaint should be dismissed because Officer Sanchez is entitled to qualified immunity, Smith's allegations against Bexar County are insufficient to establish municipal liability, and Smith failed to allege a viable discrimination claim.

## LEGAL STANDARD

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on

whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.*; *see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

A complaint should only be dismissed under Federal Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court must allow a plaintiff the opportunity to amend the complaint. *Hitt*, 561 F.2d at 608–09. A court may dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

# ANALYSIS

Smith alleges multiple causes of action against Officer Sanchez and Bexar County which can be broadly characterized as (1) § 1983 causes against Officer Sanchez for his unlawful search and seizure and pretextual mental health detention of Smith; (2) § 1983 causes against Bexar County for adopting unlawful policies and practices and failing to train, supervise, or discipline its officers; and (3) violations of federal anti-discrimination laws, namely, the Americans with Disabilities Act and the Rehabilitation Act, by both Officer Sanchez and Bexar County. The Court addresses each of these categories, in turn, below.

## I.     Officer Sanchez

Smith sues Officer Sanchez under § 1983 in his individual capacity, alleging Officer Sanchez violated Smith's Fourth Amendment rights, as incorporated under the Fourteenth Amendment, by unlawfully detaining Smith and unlawfully searching Smith's person and car without reasonable suspicion or probable cause of a crime. Smith further alleges Officer Sanchez violated his Fourth and Fourteenth Amendment rights by initiating a pretextual mental health detention to justify Officer Sanchez's unlawful search and seizure of Smith. Smith finally alleges Officer Sanchez used excessive force when he handcuffed Smith. Officer Sanchez argues he is entitled to qualified immunity, because his search and seizure of Smith were justified as incident to a valid mental health detention. He further argues injuries Smith alleges he sustained as a result of being handcuffed are not sufficient to support an excessive force cause of action.

To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) show that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Qualified immunity shields federal and state officials from liability for civil damages

unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Stated another way, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam), *cert. denied*, 142 S. Ct. 2571 (2022)). Once an officer invokes a qualified immunity defense, the plaintiff must rebut it by establishing (1) the officer violated a federal constitutional or statutory right; and (2) the unlawfulness of the conduct was clearly established at the time. *Id*. at 133. The court "may tackle these questions in whatever order it deems most expeditious." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). To identify whether the law was clearly established when the officers acted, courts "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation marks and citations omitted). Though "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. at 741. "This demanding standard protects 'all but the

plainly incompetent or those who knowingly violate the law.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In sum, qualified immunity "represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (internal quotation marks and citations omitted). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (internal quotation marks and citation omitted).

### A. Search, Seizure, and Mental Health Detention

In this case, Smith alleges Officer Sanchez violated Smith's Fourth Amendment right to be free from unlawful search and seizure and pretextual mental health detention. Officer Sanchez argues he is entitled to qualified immunity because Smith's mental health detention was justified under Texas law and, therefore, Officer Sanchez did not violate Smith's clearly established constitutional rights.

The Fourth Amendment, applied to state actors through the Fourteenth Amendment, guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United State v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011) (*quoting* U.S. Const. amend. IV). Warrantless searches and seizures are *per se* unreasonable subject to certain narrow exceptions. *Cotropia v. Chapman*, 978 F.3d 282, 286 (5th Cir. 2020) (quoting *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)). The government bears the burden of showing an exception applies. *United States v. Roberts*, 612 F.3d 306, 309 (5th Cir. 2010) (quoting *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005)). One exception permits officers to conduct brief investigatory stops based on reasonable suspicion that the person is engaged in criminal activity or wanted in connection with a completed felony. *United*

*States v. Hensley*, 469 U.S. 221, 229 (1985); *Terry v. Ohio*, 392 U.S. 1, 27–31 (1968); *see also United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). A seizure "must be 'justified at its inception.'" *United States v. Thomas*, 997 F.3d 603, 609 (quoting *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004)). Reasonable suspicion therefore "must exist *before* the initiation of an investigatory detention." *Ibid.* (quoting *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020)). In the context of a civil § 1983 Fourth Amendment claim, courts assess the reasonableness of an arrest by determining whether officers had "'probable cause to believe that a criminal offense has been or is being committed,' warrant or no warrant." *Jones v. Perez*, 790 F.App'x 576, 580 (5th Cir. 2019) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). Officer Sanchez does not argue he had reasonable suspicion or probable cause of a crime when he seized and searched Smith. Instead, Officer Sanchez says his actions were justified under the community caretaking exception.

When assessing the propriety of a mental health detention, courts examine whether officers had probable cause to detain the individual under the relevant state law. *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012). Under Texas law, even in the absence of any suspicion of criminal activity, the community caretaking exception allows police officers, as part of their duty to "serve and protect," to stop or temporarily detain an individual whom a reasonable person would believe is in need of help given the totality of the circumstances. *See Wright v. State*, 7 S.W.3d 148, 151 (Tex.Crim.App.1999) (citing *Cady v. Dobrowski*, 413 U.S. 433 (1973)). However, in order to invoke the community caretaking function, the officer's primary motive must be concern for the individual's well-being. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex.Crim.App.2002). In addition, the Fifth Circuit has recognized that an emergency medical detention is justified when: "(1) the officer has reason to believe and does believe that a

person is mentally ill and because of that illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody." *Cantrell v. City of Murphy*, 666 F.3d at 923 (citing Tex. Health & Safety Code Ann. § 573.001);[1] *see also Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

In this case, Smith plausibly alleges Officer Sanchez violated Smith's Fourth Amendment rights by initiating Smith's mental health detention as a mere pretext, after finding no evidence of a crime and realizing he had no lawful basis to detain and search Smith. Because Officer Sanchez asserts qualified immunity, however, the Court's inquiry does not stop there. Smith also has the burden to demonstrate the inapplicability of the defense by establishing (1) the officer violated a federal constitutional or statutory right; and (2) the unlawfulness of the conduct was clearly established at the time. *Ramirez v. Guadarrama*, 3 F.4th at 133. After reviewing the parties' briefings, the Court was not convinced Smith met his burden to "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d at 371–72. The Court, therefore, gave the parties an opportunity to provide supplemental briefing. In their supplemental briefing, the Defendants shifted that analysis by attaching Officer Sanchez's body cam footage, which contains potentially dispositive evidence that Smith's mental health detention was not pretextual.

---

[1] The Court notes the revised version of § 573.001, effective September 1, 2019, is substantively the same, reading: "(a) A peace officer, without a warrant, may take a person into custody, regardless of the age of the person, if the officer:
 (1) has reason to believe and does believe that:
  (A) the person is a person with mental illness; and
  (B) because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and
 (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody."

9

Smith challenges the Court's consideration of Officer Sanchez's body cam footage at this juncture because, in assessing a Rule 12(b)(6) motion, the Court's review is limited to the live complaint, and any documents attached to it, or any documents attached the motion to dismiss, or an opposition to that motion, when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d at 635. In this case, the Defendants attached Officer Sanchez's body cam footage to a Court-requested supplemental briefing. Because the evidence was not attached to the complaint, the motion, or an opposition to the motion, the Court will not consider it on a Rule 12(b)(6) motion. That being said, this Court is charged with "resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Because qualified immunity is "an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted).

The Court, therefore, finds Officer Sanchez's body cam footage is a "matter outside the pleadings" under Rule 12(d) that is best considered on a converted motion for summary judgment. *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007). Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

"If the Court concludes that the attachment is a matter outside the pleadings and does not exclude it, Rule 12(d) mandates that the Court treat the motion to dismiss as one for summary judgment." *O'Malley v. Brown Bros. Harriman & Co.*, No. SA-19-CV-0010-JKP, 2020 WL 1033658, at *3

(W.D. Tex. Mar. 3, 2020). But the decision to accept or reject a proffered matter outside the pleadings is within the Court's "complete discretion." *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193–94 & n.3 (5th Cir. 1988). Furthermore, the Fifth Circuit has held that "when a district court converts a Rule 12(b)(6) motion into a motion for summary judgment, the court must comply strictly with Rule 56's notice requirements." *Snider v. L-3 Commc'ns Vertex Aerospace, LLC*, 946 F.3d 660, 667 (5th Cir. 2019). Thus "parties must have ten days to submit additional evidence once they are put on 'fair notice' that a 'court could properly treat [a Rule 12(b)(6)] motion as one for summary judgment." *Id*. (quoting *Clark v. Tarrant Cnty.*, 798 F.2d 736, 745–46 (5th Cir. 1986)).

In this case, the Court finds the proffered body cam footage is a "matter outside the pleadings" under Rule 12(d). The Court, therefore, converts the Defendants' Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment for Smith's § 1983 causes of action against Officer Sanchez for allegedly violating Smith's Fourth Amendment right to be free from unlawful search and seizure and pretextual mental health detention. *See* ECF No. 7 at ¶¶ 34, 35, 36, 37, 39. The Court further provides the parties with an updated briefing schedule as to these causes of action, as set forth in the conclusion section of this Memorandum Opinion and Order below.

### B. Excessive Force

Smith also alleges a cause of action for excessive force. To establish a *prima facie* case for excessive force, a plaintiff must allege they suffered (1) an injury that (2) resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of the force was clearly and objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). In evaluating excessive force claims, courts weigh any use of force against its need,

applying the *Graham* factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Even the use of minor force, such as "pushing, kneeing, and slapping," is excessive when deployed against "a suspect who is neither fleeing nor resisting arrest." *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (collecting cases). However, to state a valid claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). The Fifth Circuit has held that minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force. *Id.*; *see also Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *see also Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). In this case, Smith's excessive force claim is based solely on injuries sustained from being handcuffed. Smith alleges the handcuffs caused lasting, visible trauma; however, he offers no specific facts supporting his conclusory statement about the trauma's severity. Officer Sanchez argues, and the Court agrees, that under Fifth Circuit precedent, Smith's *de minimis* injuries sustained from being handcuffed are insufficient to establish excessive force. Smith's cause of action for excessive force is, therefore, dismissed.

## II.     Bexar County

Smith offers several theories of Bexar County's liability. A municipality is responsible only for its own illegal acts and cannot be held liable on a *respondeat superior* theory of recovery under § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). Consequently, when a plaintiff asserts a § 1983 cause of action against a municipality, the alleged deprivation of constitutional rights

must be connected to an official custom, policy, practice, ordinance or regulation. *Monell*, 436 U.S. at 690–94; *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *Flores v. Cameron County*, 92 F.3d 258, 263 (5th Cir. 1996). Thus, to survive a Federal Rule 12(b)(6) challenge to a claim of municipal liability, a plaintiff must allege: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred by a person acting under the color of state law; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996).

Official policy usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Olson as Next Friend of H.J. v. City of Burnet, Tex.*, A-20-CV-00162-JRN, 2020 WL 9076545, at *3 (W.D. Tex. July 17, 2020). A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). "Acts of *omission,* as well as *commission,* may serve as a predicate for finding a policy or custom." *Batiste v. City of Beaumont*, 421 F.Supp.2d 969, 987 (E.D.Tex. 2005) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 463 (5th Cir.1994)) (emphasis in original). The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016).

### A. Policy or Practice

Smith offers three theories for Bexar County's municipal liability based on adoption of a particular policy or practice, none of which are supported by sufficient facts to establish facial plausibility. The pleading standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In this case, Smith alleges: (1) Bexar County adopted a policy or practice of initiating pretextual mental health detentions to justify unlawful searches and seizures; (2) Bexar County's participation in the Selective Traffic Enforcement Program (STEP) provides a financial incentive for pretextual arrests; and (3) Bexar County adopted a practice of concealing public information to avoid liability. To sufficiently plead municipal liability based on an alleged custom or practice, a plaintiff must provide facts showing the practice is "so persistent and widespread as to practically have the force of law" and "must do more than describe the incident that gave rise to [their] injury[.]" *Hicks-Fields v. Harris County, Texas*, 860 F.3d 803, 808 (5th Cir. 2017); *Pena v. City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018). Smith fails to plead specific factual allegations as to Bexar County's policy or practice. Instead, Smith describes his personal injury, offers conclusory statements, and provides a formulaic recitation of the elements of municipal liability. Those causes are, therefore, dismissed.

### B. Failure to Train, Supervise, or Discipline

Smith similarly fails to plausibly allege a cause of action for Bexar County's failure to train, supervise, or discipline its employees. Municipalities may be held directly liable for failure to train, supervise, or discipline employees "when the municipality's failure shows a deliberate indifference to the rights of its inhabitants." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Deliberate indifference requires more than mere negligence. *Id*. A plaintiff must

establish that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *Id*. Deliberate indifference is difficult to base on a single incident. *Id*. "Claims of inadequate training generally require that the plaintiff demonstrate a pattern." *Id*. Moreover, the previous acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Id*. *Monell* plaintiffs must also establish both the causal link ("moving force") and the municipality's degree of culpability ("deliberate indifference" to federally protected rights). *Piotrowski*, 237 F.3d 567 at 580. Here again, Smith offers little more than conclusory statements and a formulaic recitation of the elements of a municipality's failure to train, supervise, or discipline its employees. Those causes are, therefore, dismissed.

### III. Disability Discrimination

Smith alleges Officer Sanchez and Bexar County are liable for discriminating against him based on his disability, dyslexia. The Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) prohibit discrimination against qualified individuals with disabilities, but the statutes govern different entities: the ADA applies to public entities and private employers, 42 U.S.C. § 12131(1), whereas the RA prohibits discrimination in federal agencies and federally-funded programs and activities. *See* 29 U.S.C. § 794(a). "The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts. Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA." *Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010). Smith asserts causes of

action under both statutes, presumably because Bexar County is a public entity and it receives federal funding.

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a *prima facie* case under Title II, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Id*. at 235. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A).

In this case, Smith alleges, under the first prong of the ADA analysis, he is a qualified individual because he has a disability, dyslexia, which limits his ability to recall personal information. The Defendants do not dispute that Smith is a qualified individual under the ADA, so the Court need not address this prong, though the Court notes other courts have found dyslexia to be a disability giving rise to ADA liability. *See e.g. Glueck v. Nat'l Conf. of Bar Exam'rs*, SA-17-CV-451-XR, 2017 WL 5147619, at *5 (W.D.Tex. 2017). As to the second prong, the Fifth Circuit has held the ADA applies to police encounters, including traffic stops. *See Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 576 (5th Cir. 2002). The question before the Court, therefore, is whether Smith has sufficiently alleged, under the third prong, Officer Sanchez discriminated against Smith by reason of Smith's disability.

16

Smith attempts to satisfy the third prong on a theory of "failure to accommodate." That theory is expressly codified in Title I of the ADA (governing employment), which defines "discriminat[ion] … on the basis of disability" to include "not making reasonable accommodations [for a disabled employee's] known physical or mental limitations." 42 U.S.C. § 12112(b)(5)(A). Although Title II contains no similarly explicit definition, *see* 42 U.S.C. §§ 12131, 12132, the Fifth Circuit recognizes that a public entity's failure to reasonably accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 n.11 (5th Cir. 2005). The Fifth Circuit has also recognized Title II claims in the specific context of police officers who fail to reasonably accommodate the known limitations of people they detain who have disabilities. *See Delano-Pyle*, 302 F.3d at 570–71, 575–56.

A critical component of a Title II claim for failure to accommodate, however, is proof that "the disability and its consequential limitations were known by the [entity providing public services]." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013). Mere knowledge of the disability is not enough; the service provider must also have understood "the limitations [the plaintiff] experienced … as a result of that disability." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (emphasis added); *accord Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444–45, 2017 WL 4784586, at *5 (5th Cir. Oct. 24, 2017). Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. *Taylor*, 93 F.3d at 164. Thus, because "[t]he ADA does not require clairvoyance," *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995), the burden falls on the plaintiff "to specifically identify the disability and resulting limitations," *Taylor*, 93 F.3d at 165, and to request an accommodation in

"direct and specific" terms, *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001). When a plaintiff fails to request an accommodation in this manner, they can prevail only by showing that "the disability, resulting limitation, and necessary reasonable accommodation" were "open, obvious, and apparent" to the entity's relevant agents. *Taylor*, 93 F.3d at 164.

Accepting all well-pleaded facts as true, and viewing them in the light most favorable to Smith, the Court finds Smith has not met his pleading burden for his failure to accommodate claim to proceed. Smith makes no mention of any specific accommodations he requested on account of his dyslexia. In his complaint, he suggests Officer Sanchez could have taken certain steps to accommodate his difficulty remembering personal information, namely, running his license plate, allowing him to retrieve his identification from his car, or calling his wife. But Smith does not allege he actually asked Officer Sanchez for those accommodations. Further, Smith does not allege the suggested accommodations were "open, obvious, and apparent" to Officer Sanchez. Though Smith alleges he told Officer Sanchez about his dyslexia, knowledge of a disability is different from knowledge of the resulting limitation or necessary accommodation. *Windham v. Harris County*, 875 F.3d 229, 238 (5th Cir. 2017). The Court, therefore, finds Smith failed to allege sufficient facts to support his failure to accommodate claim. Specifically, he does not allege he requested accommodation for his dyslexia, nor does he allege the necessary accommodations were known by Officer Sanchez. Smith's ADA and RA causes of action are, accordingly, dismissed.

## LEAVE TO AMEND

Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a). Thus, Federal Rule 15(a) favors granting leave to amend unless a substantial reason exists, such as "undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Consequently, though Courts readily provide the opportunity to amend a deficient complaint before dismissing it with prejudice, such is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies. *Foman*, 371 U.S. at 182; *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

In this case, Smith amended his complaint after the Defendants filed their first Motion to Dismiss. *See* ECF Nos. 6, 7. U.S. Magistrate Judge Henry J. Bemporad, to whom this case is referred for pretrial management, denied the Defendants' first Motion to Dismiss in light of Smith's amended pleading. The Defendants then filed the instant motion. *See* ECF No. 9. The Court, therefore, finds Smith has been given ample opportunity to cure deficiencies in satisfaction of Federal Rule 15(a). *See Herrmann Holdings Ltd. V. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002). Consequently, the Court finds Smith has pled his best case and dismissal of the dismissed causes with prejudice is appropriate.

## CONCLUSION

For the reasons discussed, the Court **GRANTS IN PART** and **COVERTS IN PART** the Defendants' Motion to Dismiss. *See* ECF No. 9.

Specifically, the Court finds the proffered body cam footage is a "matter outside the pleadings" under Rule 12(d) and converts the Defendants' Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment for Smith's § 1983 causes of action against Officer Sanchez for allegedly violating Smith's Fourth Amendment right to be free from unlawful search and seizure and pretextual mental health detention. *See* ECF No. 7 at ¶¶ 34, 35, 36, 37, 39. The

Court further provides the parties with the following briefing schedule as to these causes of action.

The Defendants shall file their Motion for Summary Judgment, including Officer Sanchez's body cam video and any additional evidence, **on or before noon on Thursday, November 16, 2023**.

Smith shall provide any response to the motion **on or before noon on Thursday, November 30, 2023**.

The Defendants shall file any reply to the response **on or before noon on Thursday, December 7, 2023**.

The Court further **GRANTS** the Defendants' Motion to Dismiss as to all other causes of action, which are, accordingly, **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court finally **DENIES AS MOOT** Smith's Motion to Strike without prejudice to refiling. *See* ECF No. 20. Smith may raise any objections to admission of Officer Sanchez's body cam footage in his response to the converted Motion for Summary Judgment.

It is so ORDERED.
SIGNED this 2nd day of November, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE